UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------X
                                     :      18cv2933(DLC)
 IN RE LONGFIN CORP. SECURITIES CLASS :
 ACTION LITIGATION                   :      OPINION AND
                                     :         ORDER
-------------------------------------X
```

APPEARANCES:

For the plaintiffs:
Christopher James Kupka
Eduard Korsinsky
Levi & Korsinsky, LLP
55 Broadway, 10th Floor
New York, NY 10006

Donald J. Enright
Elizabeth K. Tripodi
John A. Carriel
Levi & Korsinsky LLP (DC)
1101 30th, Street, NW
Washington, DC 20007

For defendant Network 1:
Peter George Siachos
Jack I. Siegal
Gordon Rees Scully Mansukhani
18 Columbia Turnpike N.
Florham Park, NJ 07932

DENISE COTE, District Judge:

On April 24, 2019, defendant Network 1 Financial Securities

Inc. ("Network 1"), a broker-dealer, filed a motion for

reconsideration of the April 11, 2019 Opinion and Order denying

in part Network 1's motion to dismiss this securities fraud

action.  See In re Longfin Corp. Sec. Class Action Litig., No.

18cv2933 (DLC), 2019 WL 1569792 (S.D.N.Y. Apr. 11, 2019) (the

"April 11 Opinion").[1]  Familiarity with the April 11 Opinion is
assumed.  For the following reasons, the motion for
reconsideration is granted.

## BACKGROUND

This federal securities class action, filed on April 3,
2018, is brought against defendants Longfin Corp. ("Longfin"),
Network 1, Andy Altahawi ("Altahawi"), and other Longfin
executives and insiders on behalf of investors who purchased
Longfin's stock.  This class action is one of several
shareholder suits filed in the wake of an SEC investigation of
Longfin.  The Securities and Exchange Commission ("SEC") filed
suit against Longfin and its executives and insiders on April 4,
2018, and shortly thereafter acquired a court order freezing $27
million in proceeds from sales of Longfin Class A stock.  See
Sec. & Exch. Comm'n v. Longfin Corp., 316 F. Supp. 3d 743
(S.D.N.Y. 2018).  The SEC filed a second action against Longfin
and its founder, Venkata S. Meenavalli ("Meenavalli"), on June
5, 2019.  See Sec. & Exch. Comm'n v. Longfin Corp., No. 19cv5296
(S.D.N.Y. filed June 5, 2019).

Network 1 is a registered broker-dealer.  Altahawi, who was
Longfin's secretary for much of the period at issue in this

---

[1] The April 24 motion also sought certification of an issue for
interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

suit, was registered as a broker-dealer in Network 1's office from 2014-2015.  Network 1 acted as Longfin's underwriter for the stock offering at issue in this suite of lawsuits.  It has not, however, been named by the SEC as a defendant in the lawsuits the SEC has filed.

The lead plaintiffs in this class action filed a First Amended Complaint ("FAC") on July 27, 2018.  On April 11, 2019, Network 1's motion to dismiss the claim brought against it under Section 12(a)(1) of the Securities Act of 1933 (the "Securities Act") was granted, but its motion to dismiss the plaintiffs' claim that Network 1 committed fraud in violation of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, was denied.

On June 5, 2019, with permission of the Court and consent of the defendants, the lead plaintiffs filed a Second Amended Complaint ("SAC") to correct errors in the numbering of paragraphs in the FAC and to add language taken verbatim from filings in two related SEC actions.[2]  The additional allegations in the SAC are considered on this motion for reconsideration.

---

[2] The additional language is taken from the Second Amended Complaint filed on June 5, 2019 against Altahawi in a case originally filed against Longfin and certain officers and insiders on April 4, 2018, <u>SEC v. Longfin Corp., et al.</u>, No. 18cv2977, and the complaint filed against Longfin and its

As described in the SAC, the key allegations against Network 1 are as follows. Network 1 was retained as the lead underwriter for Longfin's Regulation A+ offering on August 21, 2017.[3] Per the terms of their agreement, Network 1 was to receive a percentage of the gross proceeds from the offering, and it ultimately received $438,757 in commissions for the 1,140,989 shares sold in the offering.

A company must have at least 1,000,000 publicly-held shares (not directly or indirectly held by an officer or director) to be eligible for listing on the NASDAQ. Per the terms of Longfin's Reg A+ offering statement, which was qualified by the SEC on November 22, 2017, each share sold in the offering was to be priced at $5.00. The SAC alleges that Network 1 and Altahawi were responsible for communicating with NASDAQ regarding Longfin's application for listing.

After Network 1 notified Longfin and co-defendant Meenavalli in early December that Longfin had only sold 590,804 shares to date -- far short of NASDAQ's 1,000,000 share requirement -- Meenavalli, Longfin, and Altahawi transferred 409,360 Class A shares to 24 individuals, including Longfin

_____

founder, Meenavalli, on June 5, 2019 in <u>SEC v. Longfin Corp.</u>, No. 19cv5296.

[3] For a description of a Regulation A+ offering ("Reg A+") see <u>Longfin</u>, 316 F. Supp. 3d at 748-49.

4

insiders, for no consideration on December 6 (the "December 6 Shares").  The insiders who received December 6 Shares include three co-defendants in this action: Vivek Kumar Ratakonda ("Ratakonda"), Longfin's chief financial officer; Suresh Tammineedi ("Tammineedi"), the former director of two entities related to Longfin; and Dorababu Penumarthi("Penumarthi"), who has described himself as the head of Longfin's United Kingdom operations.  The next day, Altahawi informed Network 1 that Longfin wished to close the Reg A+ offering.  In response, Network 1 requested "the list of people that invested" and "proof of Funds received."  Altahawi provided Network 1 with a list of the 24 individuals who received the December 6 Shares and "bank statements purporting to contain payment information" for these shares.  The SAC asserts that Network 1 "must have known" that some of the 24 individuals on this list, such as defendant Ratakonda, were affiliated with Longfin.  The plaintiffs allege as well that the December 6 Shares were never paid for and that the "bank statements therefore did not actually constitute 'proof of Funds received.'"

On December 11, Altahawi represented to NASDAQ that Longfin had sold over 1,000,00 Class A shares under its Reg A+ offering to 364 shareholders.  NASDAQ listed Longfin on December 13 under the ticker symbol "LFIN".  At this point, further market manipulation by Longfin and its insiders ensued.

Around December 21, seven of the December 6 Shareholders asked Network 1 to open brokerage accounts for them. Network 1 again asked Altahawi to confirm that these December 6 Shareholders had paid for their shares. In response, Altahawi again provided Network 1 with "bank statements purporting to show their purchases."

The SAC asserts that Network 1 "must" have known that the December 6 Shareholders had not paid for the December 6 Shares because two escrow accounts used in connection with the Reg A+ offering and Longfin's own PNC Bank account "contained no evidence of payments for the shares issued on December 6, 2017 or around the time that subscription agreements were signed" by the December 6 Shareholders.

On January 2, 2018, Meenavalli wrote a letter to Network 1, in response to its request regarding whether the December 6 Shareholders had paid for their shares, in which he "falsely stated" that the December 6 Shareholders had paid for the shares "by transferring funds into Longfin's 'corporate accounts'". Meenavalli controlled those corporate accounts, and the December 6 Shareholders did not pay for their shares by making payments into those accounts. From all of this, the SAC asserts that Network 1 "knew or was reckless in not knowing that the December 6 Shares were not lawfully issued."

**Discussion**

The standard for granting a motion for reconsideration is "strict." Analytical Surveys, Inc. v. Tonga Partners, L.P., 684 F.3d 36, 52 (2d Cir. 2012) (citation omitted). "[R]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked." Id. (citation omitted). "A motion for reconsideration should be granted only when the defendant identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr., 729 F.3d 99, 104 (2d Cir. 2013) (citation omitted). It is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." Analytical Surveys, 684 F.3d at 52 (citation omitted). The decision to grant or deny the motion for reconsideration is within "the sound discretion of the district court." Aczel v. Labonia, 584 F.3d 52, 61 (2d Cir. 2009) (citation omitted).

Network 1 seeks reconsideration of the April 11 Opinion's determination that the FAC adequately plead Network 1's scienter

with regard to its Section 10(b)/Rule 10b-5 claim.[4]  Section

10(b) makes it unlawful to "use or employ . . . any manipulative

or deceptive device or contrivance" in violation of any

Commission rules and regulations.  15 U.S.C. § 78j(b).

> Valid securities-manipulation claims under Section
> 10(b) must allege: (1) manipulative acts; (2) damage;
> (3) caused by reliance on an assumption of an
> efficient market free of manipulation; (4) scienter;
> (5) in connection with the purchase or sale of
> securities; (6) furthered by the defendant's use of
> the mails or any facility of a national securities
> exchange.

Fezzani v. Bear, Stearns & Co. Inc., 716 F.3d 18, 22 (2d Cir.

2013) (citation omitted).

Section 10(b) and Rule 10b-5 actions brought by private

plaintiffs cannot assert a cause of action for aiding and

abetting.  Rather, "the conduct of a secondary actor must

satisfy each of the elements or preconditions for liability."

Stoneridge Inv. Partners, LLC v. Sci.-Atlanta, 552 U.S. 148, 158

(2008).  But, "even a bit participant in the securities markets

may be liable as a primary violator under Rule 10b-5 so long as

all of the requirements for primary liability are met."  Lorenzo

v. Sec. & Exch. Comm'n, 139 S. Ct. 1094, 1104 (2019) (citation

---

[4] Network 1's motion also sought certification of the question of
whether "an entity which engages in conduct unknown to investors
that assists an issuer with obtaining a listing on an exchange
(pre-market manipulation) constitutes the type of activity
deemed actionable in a private Section 10(b)/Rule 10b-
5(subsections (a) and (c)) lawsuit."

omitted).  Where a defendant is alleged not to have "simply facilitated manipulative conduct," but rather to be a "co-participant[] . . .  in the manipulative scheme and profited by that scheme," a defendant may be liable as a primary violator. City of Providence, Rhode Island v. Bats Glob. Markets, Inc., 878 F.3d 36, 51 (2d Cir. 2017), cert. denied sub nom. BATS Glob. Markets, Inc. v. City of Providence, R.I., 139 S. Ct. 341 (2018).

"Reliance by the plaintiff upon the defendant's deceptive acts is an essential element of the § 10(b) private cause of action."  Stoneridge Inv. Partners, 552 U.S. at 159.  But, reliance in market manipulation actions may be "reliance on an assumption of an efficient market free of manipulation." Fezzani, 716 F.3d at 22 (citation omitted).

"[B]ecause a claim for market manipulation is a claim for fraud, it must be pled with particularity under Rule 9(b)." Wilson v. Merrill Lynch & Co., 671 F.3d 120, 129 (2d Cir. 2011) (citation omitted).  "[A] manipulation complaint must plead with particularity, . . . to the extent possible, what manipulative acts were performed, which defendants performed them, when the manipulative acts were performed, and what effect the scheme had on the market for the securities at issue."  ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 102 (2d Cir. 2007) (citation omitted).

In order for a securities fraud claim to survive a motion to dismiss, a plaintiff's complaint must also "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc., 531 F.3d 190, 194 (2d Cir. 2008) (citation omitted). "The requisite state of mind in a section 10(b) and Rule 10b-5 action is an intent to deceive, manipulate, or defraud," or, in the alternative, recklessness. ECA, Local 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co., 553 F.3d 187, 198 (2d Cir. 2009) (citation omitted). Mere negligence is insufficient. SEC v. Obus, 693 F.3d 276, 286 (2d Cir. 2012). An inference of scienter is "strong" and a complaint will survive if "a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 324 (2007).

Upon reconsideration, the SAC does not adequately plead Network 1's scienter. The April 11 Opinion found that, while a "close[] question", the allegations in the FAC gave rise to a strong inference that Network 1 knew the December 6 Shares were not validly issued. In reaching this conclusion, the April 11 Opinion relied upon the allegations in the FAC that the bank statements provided to Network 1 by Altahawi did not contain

proof of purchase of the December 6 Shares and that Network 1 would have recognized insiders, such as Ratakonda, in the list of 24 individual purchasers of the December 6 Shares.  Upon re-examination of these allegations, combined with the additional allegations contained in the SAC, the plaintiffs have not adequately alleged scienter.  The allegations are not as cogent or compelling as the inference that Network 1 was lied to by Longfin.  Network 1 asked for confirmation that the December 6 Shares had been paid for on three separate occasions and each time was assured that they had been validly purchased.  Twice, Network 1 received bank statements "purporting" to show payment and the third time was "falsely" told by Meenavalli that the December 6 Shares had been paid for.  These allegations give rise to an inference that Network 1 did not know that the December 6 Shares were issued for no consideration.

The plaintiffs emphasize the SAC's assertions that three accounts "contained no evidence of payments" for the December 6 Shares.  These assertions do not change the calculus.  The SAC does not contain allegations linking these three accounts to the bank statements provided to Network 1.  Similarly, while the SAC asserts that Network 1 "must have known" that individuals on the list of 24 December 6 Shareholders were Longfin insiders, it provides no particularized allegations that support this assertion.  Although Ratakonda, one of the 24 December 6

Shareholders, was a high-level Longfin executive, Network 1 is not alleged to have had any communications with him or to have known of his role. Taken together, the allegations in the SAC lead to a stronger inference that Network 1 was not aware of its role in Longfin's scheme to defraud investors than the inference that it was a knowing participant.

The plaintiffs also argue that the SAC's allegations lead to an inference that Network 1 requested confirmation and proof of payment for the December 6 Shares in order to create a paper trail to conceal its participation in Longfin's scheme. The plaintiffs contend that the multiple requests for confirmation suggest that the bank statements furnished to Network 1 on December 7 did not in fact show that the December 6 Shares were validly purchased. The SAC does not provide a sufficient description of the bank statements to support that inference. It is as plausible that the first set of statements purported to show payments for the December 6 shares, as the SAC asserts, but that Network 1 sought to confirm that reading of the statements by its request for further documentation.

There is no doubt that Longfin's Reg A+ offering was an essential part of its scheme to defraud investors. It was through this offering that Longfin was able to reach the 1,000,000-share minimum necessary to be listed on the NASDAQ market. And, Longfin's fraudulent issuance of the December 6

Shares was critical to its reaching that 1,000,000 share minimum.  While it would not be difficult to imagine the various ways in which a lead underwriter in the Reg A+ offering could have acted to knowingly further this manipulative scheme, the plaintiffs must plausibly and adequately plead such knowing participation.  The SAC does not do so.

## Conclusion

Network 1's April 24, 2019 motion for reconsideration of the April 11 Opinion is granted and the claims against Network 1 are dismissed in their entirety.  Because this Opinion grants Network 1's motion for reconsideration and dismisses the claims brought against it, there is no need to address its request to certify a question for appeal.  Accordingly, Network 1's April 24 motion for certification is denied as moot.


Dated:    New York, New York
          July 29, 2019


_____
              DENISE COTE
        United States District Judge