UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X
                                          :     18cv2933(DLC)
IN RE LONGFIN CORP. SECURITIES CLASS      :
ACTION LITIGATION                         :     OPINION AND
                                          :        ORDER
-----------------------------------------X

APPEARANCES:

For the plaintiffs:
Eduard Korsinsky
Christopher J/ Kupka
Levi & Korsinsky, LLP
55 Broadway, 10th Fl.
New York, NY 10006

Donald J. Enright
Elizabeth K. Tripodi
John A. Carriel
Levi & Korsinsky LLP (DC)
1101 30th, St., NW, Ste. 115
Washington, DC 20007

For defendant Network 1:
Jeffrey J. Imeri
Marshall Dennehey Warner Coleman & Goggin, P.C.
88 Pine St., 21st Fl.
New York, NY 10005

DENISE COTE, District Judge:

On September 13, 2019, the lead plaintiffs in this class action filed a motion seeking relief from this Court's July 29, 2019 Opinion and Order pursuant to Rule 60(b), Fed. R. Civ. P., and for leave to file a Third Amended Complaint (the "proposed TAC") pursuant to Rule 16(b), Fed. R. Civ. P.  See In re Longfin Corp. Sec. Class Action Litig. (In re Longfin II), No. 18cv2933 (DLC), 2019 WL 3409684 (S.D.N.Y. July 29, 2019) (the "July 29

Opinion"). The July 29 Opinion granted defendant Network 1 Financial Securities, Inc.'s ("Network 1") motion for reconsideration of this Court's April 11, 2019 Opinion and Order (the "April 11 Opinion")[1] and dismissed Network 1 from this litigation. Familiarity with the July 29 Opinion and the April 11 Opinion is assumed. For the following reasons, the plaintiffs' September 13 motions are denied.

## Background

This federal securities class action, filed on April 3, 2018, is brought against defendants Longfin Corp. ("Longfin"), Andy Altahawi ("Altahawi"), other Longfin executives and insiders on behalf of investors who purchased Longfin's stock, and Network 1. Network 1 is a registered broker-dealer. Altahawi, who was Longfin's secretary for much of the period at issue in this suit, was a registered representative in Network 1's office from 2014 to 2015. Network 1 acted as Longfin's underwriter for the stock offering that gave rise to this litigation.

This class action is one of several stockholder suits filed in the wake of an investigation of Longfin by the Securities and Exchange Commission ("SEC"). On April 4, 2018, the SEC filed suit against Longfin and its executives and insiders (the "April

---

[1] See In re Longfin Corp. Sec. Class Action Litig. (In re Longfin I), No. 18cv2933 (DLC), 2019 WL 1569792 (S.D.N.Y. Apr. 11, 2019)

2

4 SEC Action"), and shortly thereafter acquired a court order freezing $27 million in proceeds from sales of Longfin Class A stock.[2]  See Sec. & Exch. Comm'n v. Longfin Corp., 316 F. Supp. 3d 743 (S.D.N.Y. 2018).  The SEC filed a second action against Longfin and its founder, Venkata S. Meenavalli ("Meenavalli"), on June 5, 2019 (the "June 5 SEC Action").[3]  See Sec. & Exch. Comm'n v. Longfin Corp., No. 19cv5296 (S.D.N.Y. filed June 5, 2019).  Network 1 is not named as a defendant by the SEC in either of these lawsuits.

I. **Procedural History**

The lead plaintiffs in this class action filed a First Amended Complaint ("FAC") on July 27, 2018.  On August 14, a scheduling order was issued directing the plaintiffs that, should the defendants move to dismiss the FAC, they would have until October 5 to decide whether to further amend their complaint in response to the motion to dismiss.  The plaintiffs were advised that it was unlikely that they would be granted any further opportunity to amend.  On September 12, 2018, the plaintiffs' time to decide whether it would oppose any motion to dismiss or file an amended complaint was extended to October 26.

---

[2] On August 6, 2019, the April 4 SEC Action was closed, following the entry of final judgments against each defendant.

[3] On September 26, 2019, default judgment was ordered against Longfin in this case.  The June 5 SEC Action is still pending against Meenavalli.

3

On September 25, 2018, Network 1 moved to dismiss the FAC for failure to state a claim pursuant to Rule 12(b)(6), Fed. R. Civ. P.[4]  On October 26, the plaintiffs decided that they would stand on their FAC.  On April 11, 2019, Network 1's motion to dismiss the claim brought against it under Section 12(a)(1) of the Securities Act of 1933 (the "Securities Act") was granted, but its motion to dismiss the plaintiffs' claim that Network 1 committed fraud in violation of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, was denied.

On April 24, 2019, Network 1 moved for reconsideration of the April 11 Opinion.  On June 6, Network 1 filed a letter requesting judicial notice be taken of the new complaint filed by the SEC against Longfin and Meenavalli on June 5, which did not name Network as a defendant.  At a June 21 conference, the plaintiffs requested that they be permitted to amend their complaint in light of the June 5 SEC Action.  In light of this request, the plaintiffs were permitted to amend their complaint to add verbatim sections of the SEC's complaint, as well as to fix typographical errors in the FAC.

---

[4] Longfin, as well as the other co-defendants in this case, also sought dismissal of this action in separately filed motions.

4

On June 28, 2019, the plaintiffs filed a Second Amended Complaint ("SAC"). The additional allegations in the SAC were considered in the July 29 Opinion granting Network 1's motion for reconsideration and dismissing Network 1 from this case. See In re Longfin II, 2019 WL 1569792, at *1.

**II. The July 29 Opinion**

The July 29 Opinion concluded that the plaintiffs had failed to state a claim against Network 1 under Section 10(b) of the Exchange Act or Rule 10b-5, because they had not adequately pleaded scienter. Id. at *4-5. In order to state a claim against Network 1, the plaintiffs had to establish that Network 1, the lead underwriter for Longfin's Regulation A+ ("Reg A+") offering, was aware or recklessly disregarded that a significant number of Longfin shares had not been validly issued pursuant to a Reg A+ exemption from securities registration requirements and thus should not have been publicly traded.[5] Id. at *2.

To establish scienter, the plaintiffs alleged the following. On December 6, 2017, the penultimate day of the Reg A+ offering, Longfin had transferred Longfin shares to Longfin officers and directors for no consideration (the "December 6 Shares"), in order to meet the NASDAQ's listing requirement that a company have at least 1,000,000 publicly-held shares (i.e. not

---

[5] For a description of a Regulation A+ offering, see Longfin, 316 F. Supp. 3d at 748-49.

5

directly or indirectly held by a company officer or director). The SAC further alleged that, on December 7, 2017, Network 1 requested from Longfin's secretary, Altahawi, a "list of people that invested" and "proof of Funds received." According to the SAC, Altahawi then provided Network 1 with a list of 24 individuals who received the December 6 Shares. Based on this sequence, the SAC asserted that Network 1 "must have known" that some of the individuals on this list were associated with Longfin and thus did not count toward the NASDAQ's listing requirement.

The SAC also alleged that Network 1 "must" have known that the Longfin officers and directors had not paid for the December 6 Shares. According to the SAC, in response to Network 1's December 7 request, Altahawi also gave Network 1 "bank statements purporting to contain payment information" for the stockholders who had invested in Longfin. Around December 21, when seven of the stockholders who purchased December 6 Shares asked Network 1 to open brokerage accounts for them, Network 1 again requested confirmation that they had paid for their shares. The SAC alleged that Altahawi again provided Network 1 with "bank statements purporting to show their purchases." The SAC further alleged that two escrow accounts used in connection with the Reg A+ offering and Longfin's own PNC Bank account "contained no evidence of payments for the shares issued on

6

December 6, 2019" by the December 6 stockholders.[6] Thus, the plaintiffs argued that they had established that Network 1 knew or should have known that no consideration had been received for the December 6 Shares.

The July 29 Opinion determined that these allegations did not adequately plead Network 1's scienter. Id. at *4. The SAC had not provided any particularized allegation to support its assertion that Network 1 would have known that the individuals on the list of 24 December 6 stockholders were Longfin insiders. Id. The SAC also did not contain allegations linking the bank statements provided to Network 1 with the three accounts -- the two escrow accounts and Longfin's PNC Bank account -- that contained no evidence of payments for the December 6 Shares. Id. The July 29 Opinion thus concluded that the inference that Network 1 had been lied to was stronger than the inference that it knew the December 6 Shares were not validly issued. Id.

### III. The Instant Motion

On September 13, 2019, the plaintiffs moved for relief from the July 29 Opinion pursuant to Rule 60(b)(2), Fed. R. Civ. P. and for leave to amend their complaint pursuant to Rule 16(b),

---

[6] The SAC also alleged that, on January 2, 2018, in response to another request for payment confirmation from Network 1, Meenavalli wrote a letter to Network 1 in which he "falsely stated" that the December 6 stockholders had paid for the shares "by transferring funds into Longfin's 'corporate accounts.'" In re Longfin II, 2019 WL 3409684, at *3.

7

Fed. R. Civ. P. The motion became fully submitted on November 1.

## **Discussion**

Pursuant to Rule 60(b)(2) a court "may relieve a party or its legal representative from a final judgment, order, or proceeding" where the party presents "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." Fed. R. Civ. P. 60(b)(2). To succeed under Rule 60(b)(2), the movant must meet an "onerous standard" by demonstrating that

> (1) the newly discovered evidence was of facts that existed at the time of trial or other dispositive proceeding, (2) the movant must have been justifiably ignorant of them despite due diligence, (3) the evidence must be admissible and of such importance that it probably would have changed the outcome, and (4) the evidence must not be merely cumulative or impeaching.

United States v. Int'l Bhd. of Teamsters, 247 F.3d 370, 392 (2d Cir. 2001) (citation omitted). "Relief under Rule 60(b) is generally not favored and is properly granted only upon a showing of exceptional circumstances." Ins. Co. of N. Am. v. Pub. Serv. Mut. Ins. Co., 609 F.3d 122, 131 (2d Cir. 2010) (citation omitted).

The plaintiffs argue that the following is "newly discovered" evidence that satisfies the standard of Rule 60(b)(2): (1) monthly statements for three of Longfin's TD bank

8

accounts for periods between summer 2017 through December 31, 2018 (the "TD bank accounts"); (2) Longfin's general ledger for the period January 1, 2018 through November 29, 2018; (3) the control log of Longfin's transfer agent for Longfin's Class A common stock (the "Control Log"), as of December 21, 2017; (4) monthly statements for the Longfin escrow account at Key Bank entitled "Colonial Transfer Co. Inc. Escrow #10" for the period July 24, 2017 through December 31, 2017 (the "Key Bank escrow account"); and (5) the record of wire transfer transactions to and from the Longfin escrow account established by Continental Stock Transfer & Trust.

The plaintiffs have failed to meet the Rule 60(b)(2) standard. Little of the relevant evidence is newly discovered. In any event, none of this evidence is "of such importance that it probably would have changed the outcome" of Network 1's dismissal. Int'l Bhd. of Teamsters, 247 F.3d at 392 (citation omitted). Rather, the evidence is "cumulative" of the evidence already relied upon by the plaintiffs in the SAC. Id. (citation omitted).

To start, much of the plaintiffs' "new" evidence has no relation to Network 1. The only "new" evidence cited in the plaintiffs' proposed additions that concern Network 1 are the Control Log, the TD bank accounts, and the Key Bank escrow account. As the plaintiffs seek relief from the July 29

9

Opinion's determination that the SAC did not establish Network 1's scienter, only evidence pertaining to Network 1 could "change the outcome" of the July 29 Opinion. Id. (citation omitted). Thus, the Control Log, the TD bank accounts, and the Key Bank escrow account are the only "new" evidence that deserves consideration under Rule 60(b)(2).

The plaintiffs rely on the Control Log to demonstrate that Network 1 knew that Longfin stock had been transferred to Longfin insiders, and thus was improperly counted toward the 1,000,000 publicly-held shares necessary for listing on the NASDAQ. They contend that the Control Log listed the Longfin insiders who had received the December 6 Shares, and that Altahawi gave Network 1 the Control Log on December 7. But, the plaintiffs acknowledge that they already had access to the Control Log entries as of December 7, 2017.[7]

The Control Log also does not give rise to the inference that Network 1 knew that Longfin was impermissibly counting shares transferred to Longfin insiders toward the 1,000,000 publicly-held shares required by the NASDAQ. The plaintiffs already alleged in the SAC that Altahawi had provided Network 1

---

[7] All that is "new" about the Control Log that the plaintiffs have "discovered" for purposes of this motion is that the Control Log now extends through December 21, 2017. As the only entries relied upon by the plaintiffs to allegedly establish Network 1's scienter pre-date December 7, their discovery of additional entries is irrelevant.

with a "list" of 24 December 6 stockholders. In re Longfin II, 2019 WL 1569792 at *2. The July 29 Opinion concluded that Network 1's possession of this list did not create an inference that Network 1 also knew that the individuals identified therein were Longfin insiders. Id. at *4. The fact that the plaintiffs now have recognized this list as Longfin's Control Log does not change this determination.

The plaintiffs also rely on the TD bank accounts and the Key Bank escrow account to establish that Network 1 knew that Longfin stock had been transferred to Longfin insiders for no consideration. This evidence fares no better than the Control Log. In the SAC, the plaintiffs already alleged that certain Longfin bank and escrow accounts did not contain evidence of payment. The SAC also alleged that Network 1 had received bank statements as payment confirmation. The SAC did not allege, however, that the bank statements received by Network 1 were the same ones that did not evidence payment. On this basis the July 29 Opinion declined to infer that Network 1 knew that payments had not been made. Id. Here, the plaintiffs cite additional bank and escrow accounts that also do not show evidence of payment. But, the plaintiffs still do not link these accounts to those that were received by Network 1. These statements therefore do not give rise to the inference that Network 1 knew that no payment had been made for the December 6 Shares.

The plaintiffs do not explain how their "new" evidence fills the gaps identified in the July 29 Opinion. Instead, in a conclusory manner, plaintiffs state that the evidence demonstrates that Network 1 had "actual knowledge" that Longfin insiders were being counted as public stockholders in applications submitted to the NASDAQ.

The plaintiffs also argue that their new allegations, apart from those that rely on "newly discovered" evidence, remedy the deficiencies identified in the July 29 Opinion.[8] But, to meet the standards of Rule 60(b)(2), it is the new evidence, not other, already available evidence, that must be "of such importance that it probably would have changed the outcome." <u>Int'l Bhd. of Teamsters</u>, 247 F.3d at 392. The plaintiffs cite no law to the contrary.

Finally, the plaintiffs argue that they are entitled to relief from the July 29 Opinion because they should have been permitted to amend their complaint after it was dismissed. The plaintiffs cite no law to suggest that a court performing a Rule 60(b)(2) analysis should consider whether a plaintiff was

---

[8] In their proposed TAC, the plaintiffs have added allegations that the Underwriting Agreement and Amended Underwriting Agreement between Longfin and Network 1 contained a schedule of "Lock-Up Parties" who were Longfin directors and officers, including several individuals who were on the Control Log allegedly provided to Network 1 on December 7, 2017. As the plaintiffs recognize, neither the Underwriting Agreement nor the Amended Underwriting Agreement are "new evidence."

12

permitted to amend its complaint following a ruling on a motion to dismiss. The plaintiffs also acknowledge that a court should not consider whether leave to amend is appropriate under Rule 16(b), Fed. R. Civ. P., unless the court has concluded that a plaintiff has met the standard of Rule 60(b)(2).

In any event, the plaintiffs were not entitled to have Network 1's claim dismissed without prejudice. The plaintiffs were given numerous opportunities and extensions to amend their complaint in response to the deficiencies identified by Network 1 in its motion to dismiss and motion for reconsideration. The plaintiffs initiated this action on April 3, 2018 and were given until October 26, 2018 to decide whether to pursue a second amended complaint. The plaintiffs were warned that they were unlikely to have a further opportunity to amend. Still, on June 21, 2019, the plaintiffs were again afforded the opportunity to amend their complaint to add allegations from the June 5 SEC Action, which they did on June 28. In opposing Network 1's motion to dismiss and motion for reconsideration, Network 1 neither requested that dismissal be without prejudice nor presented a proposed third amended complaint to cure the deficiencies identified by Network 1. "[N]o court can be said to have erred in failing to grant a request that was not made."[9]

---

[9] In their reply brief, the plaintiffs argue that they "explicitly requested, but were denied, leave to amend at the .

13

Cruz v. FXDirectDealer, LLC, 720 F.3d 115, 126 (2d Cir. 2013) (citation omitted).

## Conclusion

The plaintiffs' September 13, 2019 motion for relief from the July 29 Opinion is denied. The plaintiffs' request for leave to amend their complaint also is denied.

Dated: New York, New York
November 15, 2019

```
            _____
                    DENISE COTE
              United States District Judge
```

---

. . June 21 [conference]." At the June 21 conference, the plaintiffs requested leave to amend to plead facts asserted in the June 5 SEC Action. The plaintiffs' request to amend in order to add facts from the June 5 SEC Action was granted, but, to avoid the undue delay and expense that would come from another round of briefing, the plaintiffs were instructed to only add allegations that came from the SEC's complaint verbatim. In their Rule 60(b) motion, the plaintiffs have proposed adding allegations that did not come out of the June 5 SEC Action. This is the first time in this lengthy litigation that the plaintiffs have made this request.