```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :    18cv2933 (DLC)
IN RE LONGFIN CORP. SECURITIES CLASS    :
ACTION LITIGATION                       :    OPINION AND ORDER
                                        :
                                        :
----------------------------------------X
```

APPEARANCES

For plaintiff:
Eduard Korsinsky
Christopher Kupka
55 Broadway, 10th Fl.
New York, NY 10006
(212) 363-7500

Donald J. Enright
Elizabeth K. Tripodi
John A. Carriel
1101 30th Street, N.W., Suite 115
Washington, DC 20007
(202) 524-4290

DENISE COTE, District Judge:

  On January 3, 2020, Lead Plaintiff in this class action moved for entry of default judgment against Longfin Corp. ("Longfin"), Suresh Tammineedi, Venkata Meenavalli, and Vivek Ratakonda (collectively, the "Defaulting Defendants") in the total amount of $223,037,680, plus prejudgment and post-judgment interest, to be imposed jointly and severally.  That motion is granted.

**Background**

The fraudulent scheme in which the Defaulting Defendants participated has been previously described and the Opinions containing those descriptions are incorporated by reference. See In re Longfin Corp. Sec. Class Action Lit., No. 18cv2933 (DLC), 2019 WL 1569792, at *1-3 (S.D.N.Y. Apr. 11, 2019); In re Longfin Corp. Sec. Class Action Lit., No. 18cv2933 (DLC), 2019 WL 3409684, at *1-3 (S.D.N.Y. July 29, 2019); In re Longfin Corp. Sec. Class Action Lit., No. 18cv2933 (DLC), 2019 WL 6045308, at *1-2 (S.D.N.Y. Nov. 15, 2019).

In brief, Longfin fraudulently conducted an initial public offering purportedly using a registration exemption available under Regulation A+ in June through December 2017. Meenavalli was Longfin's CEO and founder, Ratakonda was Longfin's CFO, and Tammineedi was the director of two entities related to Longfin. In order to carry out the fraudulent scheme, Longfin issued 409,360 shares of Longfin common stock as part of a sham transaction to obtain a listing on NASDAQ. Having obtained that listing, the conspirators issued false and misleading statements about Longfin from December 2017 through March 2018, which manipulated the price of Longfin's shares. The price rose to $142.82 per share. During the scheme, Longfin insiders and their affiliates sold Longfin shares and profited richly between

December 13, 2017 and March 26, 2018, when an investigation into Longfin by the Securities and Exchange Commission ("SEC") was publicly disclosed.

On April 4, 2018, the SEC sued Longfin, Meenavalli, and Tammineedi, as well as Dorababu Penumarthi and Andy Altahawi, both of whom have been dismissed without prejudice in this class action.  The SEC alleged that the defendants had caused investor harm in excess of $27 million and, on April 6, 2018, announced that it had acquired a court order freezing $27 million in trading proceeds from allegedly illegal sales of Longfin stock (the "First SEC Action").  That same day, NASDAQ announced that it was halting the trading of Longfin stock.  On May 24, 2018, Longfin stock was officially delisted from NASDAQ and began trading on the over-the-counter market at an opening price of $5.05.

In June and August 2019, final judgments were entered against all of the defendants in the First SEC Action.[1]  To date, the SEC reports that the defendants have paid collectively $26.1

---

[1] Pursuant to the final judgments entered in the First SEC Action, Longfin was held liable for $284,139 in civil penalties; Altahawi was held liable for disgorgement of $21,090,81 and $2,980,425 in civil penalties; Penumarthi was held liable for disgorgement of $1,530,688.01; Tammineedi was held liable for disgorgement of $241,608.22; and Meenavalli was held liable for $28,416 in civil penalties.

million to the SEC in satisfaction of the judgments against them.

On June 5, 2019, the SEC brought a second action in connection with this scheme, this time suing only Longfin and Meenavalli (the "Second SEC Action").  In the Second SEC Action, a final judgment was imposed against Longfin in September 2019 and a final judgment was imposed against Meenavalli in January 2020.[2]  The SEC reports that, to date, the defendants have paid collectively $250,000 to the SEC in satisfaction of these judgments.

I. Procedural History

In the wake of the SEC's investigation, Lead Plaintiff filed this class action on April 3, 2018.  The second amended complaint ("SAC") brings claims against the four Defaulting Defendants as well as Penumarthi, Altahawi, and Network 1 Financial Securities, Inc. ("Network 1"), which was the lead underwriter for Longfin's Regulation A+ offering.  The SAC alleges violations of Sections 12(a) and 15(a) of the Securities Act of 1933 (the "Securities Act"), as well as Sections 10(b)

---

[2] Pursuant to the final judgments entered in the Second SEC Action, Longfin was held liable for disgorgement and prejudgment interest of $3,532,235 and $3,243,613 in civil penalties, and Meenavalli was held liable for disgorgement and prejudgment interest of $168,00 and $232,000 in civil penalties.

and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5, promulgated thereunder.

On January 4, 2019, default was entered against Longfin. On April 4, 2019, default was entered against Meenavalli and Ratakonda.  On June 12, 2019, default was entered against Tammineedi.  Network 1 was dismissed from the action on July 29, 2019.  See In re Longfin, 2019 WL 3409684, at *3.  Penumarthi and Altahawi were dismissed from the action without prejudice on May 14, 2020.

On January 3, 2020, Lead Plaintiff filed a motion for entry of default judgment against the Defaulting Defendants and also moved for class certification.  On May 14, the class was certified.[3]  An Order of June 18 set June 26 as the deadline for Lead Plaintiff to file any supplemental submission in support of its default judgment, and, in particular, requested that plaintiff address the discrepancy between the $223,037,680 of Section 10(b) damages requested by Lead Plaintiff and the $27 million of investor harm identified by the SEC in the First SEC Action.[4]  The June 18 Order also set July 24 as the deadline for any opposition to Lead Plaintiff's motion for default judgment.

---

[3] On May 14, the action was referred to the Magistrate Judge for an inquest on damages.  On June 16, 2020, the Order referring the action to the Magistrate Judge for an inquest was vacated.

[4] The June 18 Order also asked Lead Plaintiff to address whether

On June 26, Lead Plaintiff submitted a letter stating that the SEC calculated damages based on the defendants' unlawful gains, while damages calculations were measured by investors' out-of-pocket losses in the class action.  The July 24 deadline for opposition passed without the Defaulting Defendants opposing the request for an entry of judgment.

The class seeks damages pursuant to Section 10(b) of the Exchange Act jointly and severally against each of the Defaulting Defendants in an amount measured as the difference between the actual purchase price of the stock and what the purchase price would have been absent the fraud.  Its expert has calculated that the artificial inflation in Longfin's stock price -- the difference between what the stock price actually was at a point in time, and what the price would have been absent the alleged fraud -- ranged between 55% and 89% during the class period, resulting in damages to the class of $223,037,680.

### Discussion

Upon entry of default, a defendant is deemed to have admitted liability to the plaintiff.  <u>City of New York v.</u>

---

the class sought damages under Section 20(a) of the Exchange Act, as alluded to in Lead Plaintiff's January 3 submissions. On June 26, Lead Plaintiff clarified that the class did not seek damages under Section 20(a).

Mickalis Pawn Shop, LLC, 645 F.3d 114, 128 (2d Cir. 2011). Accordingly, all of the facts alleged in the complaint, except those relating to the amount of damages, must be accepted as true. Finkel v. Romanowicz, 557 F.3d 79, 84 (2d Cir. 2009). Nonetheless, a court must satisfy itself that the plaintiff has established a sound legal basis upon which liability may be imposed. See id. Accepting the allegations in the SAC as true, Lead Plaintiff has established liability against the Defaulting Defendants.

With respect to damages, a court does not accept the allegations as true, but "must instead conduct an inquiry to ascertain the amount of damages with reasonable certainty." Credit Lyonnais Secs. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999). A court must engage in this inquiry "[e]ven when a default judgment is warranted based on a party's failure to defend." Id. Making this determination "involves two tasks: determining the proper rule for calculating damages on such a claim, and assessing plaintiff's evidence supporting the damages to be determined under this rule." Id.

Although a court may hold a hearing to assess damages, a hearing is not required when a sufficient basis on which to make a calculation exists. See Fed. R. Civ. P. 55(b)(2). Holding an inquest by affidavit, without an in-person court hearing, is

permissible "as long as [the court] ensured that there was a basis for the damages specified in the default judgment." Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Division of Ace Young Inc., 109 F.3d 105, 111 (2d Cir. 1997) (citation omitted).  In this case, Lead Plaintiff has offered sufficient evidentiary support through declarations and exhibits submitted in support of his claim for damages.  No evidentiary hearing is required.

Economic loss in Section 10(b) cases is traditionally determined by the use of the "out-of-pocket" measure for damages.  Acticon AG v. China Ne. Petroleum Holdings, Ltd., 692 F.3d 34, 38 (2d Cir. 2012).  Under this measure, "a defrauded buyer of securities is entitled to recover only the excess of what he paid over the value of what he got."  Id. (citation omitted).  As the Second Circuit has explained, "the correct measure of damages under § 28 of the [Securities Exchange] Act, 15 U.S.C. § 78bb(a), is the difference between the fair value of all that the plaintiff received and the fair value of what he would have received had there been no fraudulent conduct."[5]  Id. (citation omitted).

---

[5] The Private Securities Litigation Reform Act ("PSLRA") caps damages by a "bounce back" provision, which provides that

> the award of damages to the plaintiff shall not exceed
> the difference between the purchase or the sale price

8

The expert report submitted by Lead Plaintiff in support of the motion for default judgment demonstrates that it is appropriate to calculate the artificial inflation in Longfin's stock price as ranging between 55% and 89% during the class period.  While the SEC has estimated investor harm in the amount of $27 million, it sought disgorgement, rather than out-of-pocket damages.  Damages to the class in the amount of $223,037,680 is, therefore, awarded.

Prejudgment Interest

Lead Plaintiff requests prejudgment interest beginning on December 13, 2017, as well as post-judgment interest until the judgment is satisfied, at the statutory rate set forth in 28 U.S.C. 1961.  A district court enjoys broad discretion to decide whether to award prejudgment interest.  SEC v. First Jersey Sec., Inc., 101 F.3d 1450, 1476 (2d Cir. 1996).  In exercising such discretion, the district court must consider

> (i) the need to fully compensate the wronged party for actual damages suffered, (ii) fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such
>
> paid . . . by the plaintiff for the subject security and the mean trading price of that security during the 90-day period beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market.

15 U.S.C. § 78u-4(e)(1).

other general principles as are deemed relevant by the court.

Frommert v. Conkright, 913 F.3d 101, 109 (2d Cir. 2019) (citation omitted).  An award of prejudgment interest may be appropriate when a plaintiff recovers out-of-pocket damages for a defendant's violation of § 10(b) of the Securities Act.  See Commercial Union Assur. Co., plc v. Milken, 17 F.3d 608, 615 (2d Cir. 1994) ("Under the rescissory measure of damages appellants would be entitled to a return of the consideration paid for the... interests plus prejudgment interest, less any income received on the interests.").

The same factors that a court relies on to determine whether an award of prejudgment interest is warranted "also inform a district court's choice of a particular interest rate." Frommert, 913 F.3d at 109.  The federal post-judgment interest rate set forth in 28 U.S.C. § 1961 can be an appropriate rate at which to award pre-judgment interest.  See id.  Post-judgment interest at the federal post-judgment interest rate is awarded to a prevailing plaintiff as a right.  See 28 U.S.C. § 1961 ("Interest shall be allowed on any money judgment in a civil case recovered in a district court.").

Lead Plaintiff is awarded prejudgment interest at the statutory rate set forth in 28 U.S.C. § 1961 for the period starting April 6, 2018 until the entry of judgment.  Although

Lead Plaintiff requests prejudgment interest for the period starting December 13, 2017 -- presumably because Longfin issued its first misleading statement on this date -- Lead Plaintiff has not provided any explanation or argument addressing why this is the appropriate starting date for prejudgment interest to accrue in this class action.  As the class includes investors who purchased Longfin stock from December 13, 2017 through April 6, 2018, many of the investors that are members of this class may not have purchased Longfin stock until April 6.  It is not appropriate to award prejudgment interest for a period pre-dating the class members' purchase of Longfin stock.  Prejudgment interest, therefore, shall run from the period April 6, 2018 to the date judgment is imposed at the statutory rate set forth in 28 U.S.C. § 1961.  Post-judgment interest is awarded from the date judgment is imposed to the date judgment is satisfied, also at the statutory rate set forth in 28 U.S.C. § 1961.

## Conclusion

Lead Plaintiff's January 3, 2020 motion for default judgment is granted.  Judgment is entered in favor of the class against the Defaulting Defendants, jointly and severally, in the amount of $223,037,680, plus prejudgment interest beginning on

April 6, 2018 and post-judgment interest until the judgment is satisfied, both at the statutory rate set forth in 28 U.S.C. § 1961.

Dated:   New York, New York
         July 29, 2020

                                   _____
                                        DENISE COTE
                                   United States District Judge