MANDATE

20-2948-cv
*Malik v. Network 1 Financial Sec., Inc.*

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: March 08, 2022

18cv2933 DLC

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 15th day of February, two thousand twenty-two.

PRESENT:
        BARRINGTON D. PARKER JR.,
        JOSEPH F. BIANCO,
        STEVEN J. MENASHI,
            *Circuit Judges.*

-----------------------------------------------------------------
MOHAMMAD A. MALIK,

        *Plaintiff-Appellant*,

KARTHIK REDDY, individually and on behalf of all others similarly situated, LOONG CHEE MIN, individually and on behalf of all others similarly situated, ROBERT E. MILLER, CHEN WEI, individually and on behalf of all others similarly situated,

        *Plaintiffs*,

v.                                                                       20-2948-cv

NETWORK 1 FINANCIAL SECURITIES, INC.,

        *Defendant-Appellee*,

LONGFIN CORP., VIVEK KUMAR RATAKONDA, ANDY ALTAHAWI, SURESH TAMMINEEDI, DORABABU PENUMARTHI, VENKAT S. MEENAVALLI,

MANDATE ISSUED ON 03/08/2022

*Defendants.*

------------------------------------------------------------------

FOR PLAINTIFF-APPELLANT:   DONALD J. ENRIGHT, Levi & Korsinsky, LLP, Washington, DC.

FOR DEFENDANT-APPELLEE:   JEFFREY IMERI (Richard C. Imbrogno, Marshall Dennehey Warner, *on the brief*), Coleman & Goggin, P.C., New York, NY.

Appeal from the orders and judgment of the United States District Court for the Southern District of New York (Cote, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the orders and judgment of the district court are **AFFIRMED**.

Mohammad Malik, lead plaintiff in this action, appeals from the orders and judgment of the district court (Cote, *J.*) related to claims brought against Network 1 Financial Securities ("Network 1") as part of a federal securities class action, filed on April 3, 2018, against Network 1, Longfin Corp. ("Longfin"), Andy Altahawi, and other Longfin executives and insiders. As relevant to this appeal, the lawsuit alleges that Network 1 participated in a scheme to deceive the public by facilitating the unlawful issuance of unregistered Longfin securities, thereby causing the public to purchase unregistered Longfin securities at inflated prices, in violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Securities and Exchange Commission ("SEC") Rule 10b-5, promulgated thereunder, 17 C.F.R. § 240.10b-5.[1] More

---

[1] Plaintiffs also alleged that Network 1 violated Section 12(a)(1) of the Securities Act of 1933, 15 U.S.C. § 77l(a)(1). However, the district court dismissed that claim on the ground that plaintiffs did not allege Network 1 was a "seller" under Section 12(a)(1). Because plaintiffs do not challenge that ruling on appeal, we deem that claim abandoned. *See Norton v. Sam's Club*, 145 F.3d 114, 117 (2d. Cir. 1998).

2

specifically, plaintiffs allege that Network 1, as the lead underwriter for Longfin's Regulation A+ ("Reg A+") offering, was aware of, or recklessly disregarded, the fact that a significant number of Longfin shares had not been validly issued pursuant to a Reg A+ exemption from securities registration requirements, because they had been transferred to Longfin insiders for no consideration on December 6, 2017. Accordingly, plaintiffs claim the shares should not have been publicly traded. Plaintiffs assert that it was through this fraudulent conduct in connection with the Reg A+ offering that Longfin was able to reach the 1,000,000-share minimum for listing on the NASDAQ market.

On appeal, plaintiffs challenge the following: (1) the district court's June 21, 2019 scheduling order permitting plaintiffs to amend their complaint for a second time, but only in a limited manner; and (2) the district court's November 15, 2019 opinion and order denying the motion for relief from its July 29, 2019 order dismissing Network 1 from the action with prejudice. Specifically, plaintiffs contend that the district court, in its June 21, 2019 order, improperly denied plaintiffs' request for comprehensive leave to amend and then compounded that error by denying plaintiffs' subsequent motion for relief, pursuant to Federal Rule of Civil Procedure 60(b)(2), in which they sought to file a Third Amended Complaint ("TAC") based on purportedly new evidence. In denying the Rule 60(b)(2) motion, the district court concluded, *inter alia*, that the purported new evidence contained in the TAC would not alter its previous conclusion that the allegations regarding Network 1's scienter were insufficiently pled. We assume the parties' familiarity with the underlying facts and prior record of the proceedings, to which we refer only as necessary to explain our decision to affirm.

We review both a "district court's denial of a postjudgment motion for leave to replead,"

3

*Williams v. Citigroup Inc.*, 659 F.3d 208, 212 (2d Cir. 2011), and a "denial of leave to amend under an abuse of discretion standard," *Hutchison v. Deutsche Bank Sec. Inc.*, 647 F.3d 479, 490 (2d Cir. 2011) (internal quotation marks omitted). However, when a district court's denial of leave to amend was based on an interpretation of law, such as futility, we review that denial *de novo*. *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012). To prevail on a Rule 60(b)(2) motion, "[t]he movant must demonstrate that (1) the newly discovered evidence was of facts that existed at the time of trial or other dispositive proceeding, (2) the movant must have been justifiably ignorant of them despite due diligence, (3) the evidence must be admissible and of such importance that it probably would have changed the outcome, and (4) the evidence must not be merely cumulative or impeaching." *Mirlis v. Greer*, 952 F.3d 36, 50 (2d Cir. 2020) (quoting *United States v. Int'l Brotherhood of Teamsters*, 247 F.3d 370, 392 (2d Cir. 2001)), *cert. denied sub nom.*, *Greer v. Mirlis*, 141 S. Ct. 1265 (2021).

As a threshold matter, the parties dispute whether plaintiffs properly requested leave to amend the pleadings in broad terms, such that they can challenge the limitations placed on such amendments by the district court in its June 21, 2019 order. The parties similarly dispute whether the additional allegations that plaintiffs later sought to include in the TAC as part of their Rule 60(b)(2) motion were "newly discovered evidence" or whether such evidence was, in whole or in part, already available to plaintiffs before the deadline for amending the pleadings. However, we need not address these issues because we conclude that, even if all of the additional allegations contained in the proposed TAC are considered, the district court correctly concluded that the proposed TAC fails to adequately allege scienter as to Network 1 and, thus, any proposed amendment would be futile.

4

As Network 1 points out, the NASDAQ rules create no separate duty for an underwriter to guarantee a company's satisfaction of the listing criteria.  *See* NASDAQ Rule 5205 (requiring the "Company" —here, Longfin—to guarantee satisfaction of the listing criteria, but imposing no duty on an underwriter); NASDAQ FAQ Identification Number 1415 (same).  However, where a defendant is not alleged to have "simply facilitated manipulative conduct," but instead is a "co-participant[] . . . in the manipulative scheme and profited by that scheme," that defendant can be held liable as a primary violator under Section 10(b) and Rule 10b-5.  *City of Providence v. Bats Glob. Mkts., Inc.*, 878 F.3d 36, 51 (2d Cir. 2017), *cert. denied sub nom.*, *BATS Glob. Mkts., Inc. v. City of Providence*, 139 S. Ct. 341 (2018).

Moreover, to survive a Rule 12(b)(6) motion, a securities fraud claim must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. §78u-4(b)(2)(A); *see also Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013).  In this Circuit, the scienter requirement is met where the complaint alleges facts showing either (1) "motive and opportunity to commit the fraud" or (2) "strong circumstantial evidence of conscious misbehavior or recklessness."  *Employees' Ret. Sys. of Gov't of the Virgin Islands v. Blanford*, 794 F.3d 297, 306 (2d Cir. 2015) (internal quotation marks omitted).  Recklessness is sufficient to establish scienter only if the defendant's conduct is "an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it."  *In re Carter-Wallace, Inc., Sec. Litig.*, 220 F.3d 36, 39 (2d Cir. 2000).  A complaint will survive a motion to dismiss for failure to state a claim "if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged."  *Tellabs,*

5

*Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007).

First, plaintiffs failed to sufficiently plead a motive by Network 1 to commit fraud that would create a strong inference of scienter. "[P]laintiffs [must] allege that defendants benefitted in some concrete . . . way from the purported fraud." *Novak v. Kasaks*, 216 F.3d 300, 307–08 (2d Cir. 2000). "[F]inancial gain . . . weigh[s] heavily in favor of a scienter inference." *Tellabs, Inc.*, 551 U.S. at 325. However, we have emphasized that, "in attempting to show that a defendant had fraudulent intent, it is not sufficient to allege goals that are possessed by virtually all corporate insiders." *S. Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98, 109 (2d Cir. 2009) (internal quotation marks omitted) (providing examples of common goals: "the desire to maintain a high credit rating for the corporation or otherwise sustain the appearance of corporate profitability or the success of an investment, or the desire to maintain a high stock price in order to increase executive compensation"); *ECA, Local 134 Local IBEW Joint Pension Tr. of Chicago*, 553 F.3d at 200 ("[T]he desire to maximize the corporation's profits does not strengthen the inference of an intent to defraud. . . .").

In the TAC, plaintiffs allege that Network 1 negotiated an increase in fees because it sought to "receive larger commissions on the funds [Longfin] unlawfully raised in the Offering." Joint App'x at 652. Although plaintiffs contend that the new motive allegations are sufficient to plead scienter—namely, that Network 1 negotiated an increased underwriting fee because it realized that it would not receive commissions from other investments, but from similar unlawful issuances— we are unpersuaded. Network 1's performance of its duty as underwriter and receipt of commissions thereunder, including its negotiation of higher fees, is insufficient to support scienter through motive. *See ECA, Local 134 IBEW Joint Pension Tr. of Chicago*, 553 F.3d at 201

6

(observing that an increase in compensation alone cannot support a finding of a motive).

Because plaintiffs failed to plead particularized facts demonstrating motive and opportunity to commit fraud, they must plead particularized allegations showing conscious misbehavior or recklessness to survive a motion to dismiss. In cases in which liability is premised upon alleged material omissions, if the complaint "does not present facts indicating a clear duty to disclose, plaintiff's scienter allegations do not provide strong evidence of conscious misbehavior or recklessness." *Kalnit v. Eichler*, 264 F.3d 131, 144 (2d Cir. 2001) (emphasis omitted). Where a plaintiff fails to adequately allege motive, as is the case here, the strength of the circumstantial evidence must be correspondingly greater. *Id.* at 142.

Plaintiffs argue that the allegations in the TAC demonstrate that Network 1 *was* aware of the NASDAQ requirements for listing and knew Longfin did not meet the requirements, yet nonetheless chose to participate as an underwriter in violation of a duty to not participate in a fraudulent offering. We disagree. As the district court explained, much of the "new evidence" presented in the TAC had no relation to Network 1, such as (1) Longfin's general ledger for the period January 1, 2018 through November 29, 2018, and (2) the record of wire transfer transactions to and from the Longfin escrow account established by Continental Stock Transfer and Trust.

Moreover, as to the remaining purported new evidence in the TAC—namely, Longfin's Control Log, certain monthly statements for three of Longfin's TD bank accounts, and certain monthly statements for Longfin's escrow account at Key Bank—the district court also correctly determined that such documents do not sufficiently allege scienter. For example, the TAC does not allege that there was any indication on the Control Log that some of the listed individuals, who had been issued December 6 shares, were corporate insiders. Instead, plaintiffs assert that Network

7

1 should have been separately aware of these individuals' insider status because, *inter alia*, their names also appear on the list of "lock-up" parties contained in the Underwriting Agreement. However, these allegations sound, at most, in negligence and thus are insufficient to support an inference of recklessness that satisfies the scienter requirement. *See S. Cherry St., LLC*, 573 F.3d at 109 (holding that recklessness requires a "state of mind approximating actual intent, and not merely a heightened form of negligence") (internal citation, quotation marks, and emphasis omitted).

Similarly, although the TAC alleges that "[t]he records for Longfin's escrow accounts and bank account . . . show that none of the December 6 Shareholders paid for the shares," Joint App'x at 612 (citation omitted), it is not entirely clear that these are the same records that Longfin provided to Network 1 after Network 1 requested such documentation regarding the receipt of funds. For example, the TAC separately alleges that the Longfin transfer agent emailed to Network 1 an "escrow reconciliation printout showing all of the deposits that were received along with the remittances to Longfin." Joint App'x at 609. However, there is no indication in the TAC that this printout showed a lack of consideration for the issuance of any shares. In any event, as the district court noted in its July 29, 2019 order, there were allegations in the Second Amended Complaint that Network 1 not only asked for confirmation on two separate occasions regarding payment for the December 6 shares and received bank statements in response, but also that Network 1 was "falsely" told by Longfin's Chief Executive Officer that the funds had been received for the December 6 shares. Joint App'x at 574. The district court concluded that these allegations "give rise to an inference that Network 1 did *not* know that the December 6 shares were issued for no consideration." Joint App'x at 574 (emphasis added). We agree. Under the heightened pleading

8

standard for this fraud claim, we are required to "take into account plausible opposing inferences" and consider "plausible, nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff." *Tellabs, Inc.*, 551 U.S. at 323–24. The additional evidence in the TAC, even when considered with the allegations in the TAC as a whole, does not provide an inference of scienter that is "cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id*. at 324.

In sum, the TAC does not adequately allege scienter, and therefore does not cure the deficiencies in the Second Amended Complaint that led to the dismissal of Network 1 from the action. Accordingly, the district court did not abuse its discretion in dismissing the claims with prejudice, or in denying plaintiffs' subsequent motion for reconsideration to file the TAC, because any such amendment was futile.

*       *       *

We have considered plaintiffs' remaining arguments and find in them no basis for reversal. Accordingly, we **AFFIRM** the orders and judgment of the district court.

FOR THE COURT:<br>Catherine O'Hagan Wolfe, Clerk of Court



A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

9